UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTEZ ROMAL BICKHAM,

                    Petitioner,                    Case No. 2:14-cv-14560
                                                   Hon. Sean F. Cox
v.

THOMAS WINN,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING A CERTIFICATE OF APPEALABILITY

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Petitioner Martez Romal Bickham was convicted after a jury trial in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS 750.317, armed robbery, MICH. COMP. LAWS 750.529, assault with intent to commit armed robbery, MICH. COMP. LAWS 750.89, and commission of a felony with a firearm. MICH. COMP. LAWS 750.227b. The petition raises a single claim: Petitioner's Sixth Amendment right to a public trial was violated when the courtroom was closed to members of the public during jury selection. The Court will deny the petition because the state court adjudication of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d). The Court will also deny Petitioner a certificate of appealability.

### I. Background

Petitioner's convictions arise out of the shooting death of Allen Jenkins and the robbery of Roderick Wilson outside a coney island restaurant in Detroit. Petitioner was tried jointly with his co-defendant, Aaron Daniels.

On the first morning of trial approximately fifty members of the public were in attendance, essentially filling the small courtroom. Dkt. 5-10, at 108. Accordingly, before the fifty-two person jury venire was brought in, the deputies removed members of the public to make room for the venire. The following colloquy then occurred:

> [Defense Counsel] Not to cause a lot of consternation, but at least, just for the record, you United States versus Presley. I believe its improper for court officers to clear the courtroom in voir dire process. United States versus Presley decided last April indicated that the family members or witnesses for the defendant can be present during voir dire.
>
> The Court: The court is not excluding people from being in the courtroom. Right now the deputies are removing the spectators or people who are in the courtroom in order to allow that the jury panel of over fifty people be allowed in, and so that they are not intermixed with the audience, and so once the whole panel is in, those who fit separately from the jury can be allowed in. But we cannot bring a jury in with a the number of people in this courtroom. They fill the bleachers, and in order to conduct voir dire, we need the jury panel to fit into the courtroom.
>
> At this point, there were no available seats to fit jurors in. So for that reason, those people have to be removed initially in order to bring in the panel.
>
> [Defense Counsel]: I understand, judge. I just wanted to bring that to your attention.
>
> The Court: I'm well aware of it. Thank you.

Dkt. 5-10, at 19-20.

The prospective jurors where then escorted into the courtroom, and the selection process was completed. *Id.*, at 21-104. After the jury was empaneled and left the courtroom, defense counsel noted that the courtroom remained closed during jury selection:

> [Defense Counsel] Judge, I would just again under Presley versus United States, the other family members of the defendant, supporters and possible witnesses were not allowed to come back in, or were not allowed to be seated in the courtroom during voir dire after they were excluded for the seating.
>
> Trial Court: All right. Thank you. I would state that there was no additional request made after the court explained the situation, and that the jury panel being [a] fifty-two member panel filled the entire courtroom, except for the small bench that

can hold two people. If there was a request for two people to be in, specifically because there was a crowd of probably fifty people in the courtroom, some may be family or friends, or some having to do with other cases, I have no idea who they were but there was no ruling made on any request. It was not made.

*Id.* at 107–08.

Following Petitioner's conviction the parties entered into a "Stipulation Between Parties to Expand the Record" on direct appeal in the Michigan Court of Appeals which further described what occurred:

1. Defendant's mother and brother, as well as members of the public, were instructed to leave Judge Fresard's courtroom prior to jury selection.

2. Judge Fresard responded to defense counsel's objection by saying that the public would be readmitted "once the whole panel is in," subject to space limitations. The courtroom deputies were present for this exchange.

3. The courtroom deputies did not, in fact, allow anyone back in the courtroom. Although the individual deputies responsible for courtroom security during defendant's trial do not remember this case specifically, it was their practice at the time to post a sign (similar to Attachment A) on the outer courtroom door prohibiting the public from entering during voir dire. Further, it was their practice to physically deny access to anyone who attempted to enter during jury selections, regardless of their relationship to the proceedings, unless the judge specifically instructed them to let in specific people.

4. In defendant's case, defendant's brother and mother observed a sign on the courtroom door consistent with Attachment A during jury selection. Defendant's brother was told by a deputy that he could not enter the courtroom during jury selection. Defendant's mother observed a deputy telling a woman that she could not enter the courtroom while jury selection was in progress.

5. In reliance upon Judge Fresard's statement that the public would be readmitted once the whole panel entered the courtroom, defense counsel did not ask that any specific people be readmitted to the courtroom during jury selection. Similarly, the judge did not instruct the deputies to let any specific person or persons back in, and so none were.

6. The jury panel in defendant's case took up all the seating space in the courtroom, save for a small bench immediately inside the courtroom door and a larger bench directly behind the two counsel tables. The smaller bench could have accommodated at least two members of the public, and the large one at least a dozen. It is unusual

3

to allow members of the public to sit at this larger bench, but Judge Fresard has indicated that, if necessary, it could have been used.

7. Judge Fresard's courtroom has never used additional chairs to provide seating for the public during jury selection. Judge Fresard has not considered this measure as an alternative to barring members of the public from jury selections because of space limitations or concerns about keeping potential jurors separate from spectators.

8. The photo in Attachment A shows the outer door to Judge Fresard's courtroom, and was taken on or about October 19, 2011 by an unrelated member of the defense bar.

Dkt. 5-22, at 107-110.

"Attachment A" is a color photograph depicting a wooden door labeled "Courtroom 804"

with a piece of paper taped above the handle stating in bold lettering "JURY SELECTION IN

PROGRESS  - DO NOT ENTER."

Petitioner's appellate brief raised what now forms his habeas claim as well as other claims

not present in this action. The Michigan Court of Appeals issued an unpublished opinion rejecting

Petitioner's habeas claim as follows:

> Defendant Bickham first argues that the trial court's closure of the courtroom during voir dire violated his right to a public trial and amounts to a structural error mandating the reversal of his convictions. We disagree.
>
> After the trial court directed the jury panel to enter the courtroom, defendant Bickham's attorney and the court shared the following colloquy:
>
> > [Defendant Bickham's counsel]: Not to cause a lot of consternation, but . . . just for the record, . . . [*Presley v. Georgia*, 558 U.S. 209; 130 S.Ct. 721; 175 L.Ed. 2d 675 (2010)]. I believe it's improper for court officers to clear the courtroom in voir dire process. [*Presley*,] decided last April indicated that the family members or witnesses for the defendant can be present during voir dire.
> >
> > The Court: The Court is not excluding people from being in the courtroom. Right now the deputies are removing the spectators or people who are in the courtroom in order to allow that the jury panel of over fifty people be allowed in, and so that they are not intermixed with the audience, and so once the whole panel is in, those who fit

4

> separately from the jury can be allowed in. But we cannot bring a jury in with the number of people in this courtroom. They fill the bleachers, and in order to conduct voir dire, we need the jury panel to fit into the courtroom.
>
> At this point, there were no available seats to fit jurors in. So for that reason, those people have to be removed initially in order to bring in the panel.

After jury selection concluded, defendant Bickham's attorney and the court engaged in the following discussion:

> [Defendant Bickham's counsel]: Judge, I would just once again under [*Presley*], the other family members of the defendant, supporters and possible witnesses were not allowed to come back in, or were not allowed to be seated in the courtroom during voir dire after they were excluded for the seating.
>
> The Court: All right. Thank you. I would state that there was no additional request made after the court explained the situation, and that the jury panel being [a] fifty-two member panel filled the entire courtroom, except for the small bench that can hold two people. If there was a request for two people to be in, specifically because there was a crowd of probably fifty people in the courtroom, some may be family or friends, or some having to do with other cases, I have no idea who they were. But there was no ruling made on any request. It was not made. . . .

Because defendant Bickham's attorney never asked the trial court to readmit any spectators during jury selection, and instead only mentioned the courtroom closure after the jury selection was completed, he did not preserve this issue with a timely objection.

> An unpreserved claim involving "a defendant's right to a public trial is subject to the forfeiture rule articulated in *People v. Carines*," 460 Mich. 750, 763; 597 N.W.2d 130 (1999). *People v. Vaughn*, 491 Mich. 642, 646; ___ N.W.2d ___ (2012).
>
> In analyzing a forfeited claim of error, a defendant is not entitled to relief unless he can establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*Id.* at 654.]

5

A criminal defendant possesses "the right to . . . a public trial" pursuant to the federal and Michigan constitutions. *Id*. at 650, citing US Const, Ams VI and XIV, and Const 1963, art 1, § 20. The "right to a public trial . . . encompasses the right to public voir dire proceedings." *Vaughn*, slip op at 6. In *Vaughn*, our Supreme Court analyzed a defendant's unpreserved claim that his right to a public trial was violated when the trial court closed the courtroom to the public during jury selection. The Court stated that plain error had occurred given the trial court's neglect to "advance an overriding interest . . . likely to be prejudiced" absent closure of the courtroom during voir dire. *Id*. at 665 (internal quotation and citations omitted). The Court also found "that a plain structural error satisfies the third *Carines* prong" because "structural errors are intrinsically harmful, without regard to their effect on the outcome." *Id*. at 665-666 (internal quotation and citation omitted).

However, the Court cautioned that "even if [a] defendant can show that the error satisfied the first three *Carines* requirements," an appellate court "must exercise discretion and only grant . . . a new trial if the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (internal quotation and citation omitted). The Court in *Vaughn*, *Id*. at 668, held as follows that the courtroom closure in that case did not seriously and adversely impact those judicial proceedings:

> A review of the circuit court transcript during defendant's voir dire shows that both parties engaged in a vigorous voir dire process, that there were no objections to either party's peremptory challenges of potential jurors, and that each party expressed satisfaction with the ultimate jury chosen. Moreover, because "the venire is drawn from the public itself," individual venire members "remain public witnesses during much of the voir dire proceedings, listening to the court's questions and observing the conduct of counsel, until such time as they are chosen for the jury, disqualified, or excused." [*United States v. Gupta*, 650 F.3d 863, 870 (2nd Cir. 2011).] Thus, "the presence of the venire lessens the extent to which (the court's) closure implicates the defendant's public trial right because the venire, derived from and representative of the public, guarantees that the voir dire proceedings will be subject to a substantial degree of continued public review." [*Id*. at 870-871.] Because the closure of the courtroom was limited to a vigorous voir dire process that ultimately yielded a jury that satisfied both parties, we cannot conclude that the closure "seriously affected the fairness, integrity, or public reputation of judicial proceedings." [*Carines*, 460 Mich at 774.] . . .

In *People v Russell*, ___ Mich. App. ___; ___ N.W.2d ___ (Docket No. 304159, issued September 4, 2012), this Court considered whether the defense counsel was ineffective for "failing to object to the [trial court's] partial closure of

the courtroom during jury voir dire." *Id*., slip op at 6. We noted:

> A defendant has the right to a public trial, which includes the right to have the courtroom open to the public during jury voir dire. *Vaughn*, [491 Mich 650-653]. However, the effect of a partial closure of trial does not reach the level of total closure and only a substantial, rather than compelling, reason for the closure is required. *People v. Kline*, 197 Mich. App. 165, 170; 494 N.W.2d 756 (1992).
>
> The record reveals that the voir dire proceedings were partially closed as a result of the limited capacity of the courtroom. The limited capacity of the courtroom was a substantial reason for the closure, and thus, this partial closure did not deny defendant his right to a public trial. [Russell, slip op at 7.]
>
> Here, as in *Vaughn*, the trial court closed the courtroom only during a probing voir dire of the prospective jurors; neither the prosecutor nor either defense counsel objected to "any peremptory challenges of potential jurors," and neither the prosecutor nor either defense counsel voiced objections to the juries selected. Therefore, as in *Vaughn*, we cannot conclude that the closure seriously affected the fairness, integrity, or public reputation of judicial proceedings. Similarly, as in *Russell*, the trial court cited the limited courtroom capacity as the basis for the partial courtroom closure during voir dire. Defendant Bickham's attorney did not dispute the trial court's courtroom-space explanation. The limited capacity of the courtroom was a substantial reason for the closure, and, thus, this partial closure did not deny defendant his right to a public trial. Accordingly, defendant is not entitled to relief on appeal with respect to this issue.

Dkt. 5-22, at 4-7.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Bickham*, 830 N.W.2d 773 (Mich. 2013) (unpublished table decision).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts.

7

Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woods v. Etherton,* 136 S.Ct. 1149, 1152 (2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### III. Analysis

Petitioner claims that the exclusion of the public from his jury selection proceeding violated his Sixth Amendment right to a public trial. Petitioner asserts that the Michigan Court of Appeals' rejection of his claim constituted an unreasonable application of *Presley v. Georgia*, 558 U.S. 209 (2010), and the determination by the state court that only a "partial closure" occurred constituted an unreasonable determination of the facts.

Respondent asserts that the claim is procedurally barred from review because Petitioner did not renew his objection after the jury venire was seated and the public was not allowed to reenter. A procedural default, however, is not a jurisdictional matter, *Trest v. Cain*, 522 U.S. 87, 89 (1997), and, in certain cases, a determination of whether Petitioner's claim is procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). That is the situation here. Accordingly, the Court will proceed to the merits.

A threshold issue is whether § 2254(d) deference applies to the state court adjudication of Petitioner's claim given the fact that it conducted review under the "plain error" standard. It is true that the vast majority of the state appellate court's decision focused on counsel's failure to preserve the claim, and how that fact required him to show that any error "affected the fairness, integrity, or public reputation of judicial proceedings" under *People v. Carines*, 460 Mich. 750, 763 (1999). But in the course of its analysis the Michigan Court of Appeals also discussed the merits of Petitioner's claim, ultimately finding "[the] partial closure did not deny defendant his right to a public trial." Dkt. 5-22, at 7.

When a state court addresses a constitutional claim in conducting plain error review, its decision constitutes an "adjudication on the merits" for purposes of § 2254(d). *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); *see also Frazier v. Jenkins*, 770 F.3d 485, 506 (6th Cir. 2014)

9

(Sutton, J., concurring in part and concurring in judgment) (opining that *Fleming* "makes clear as day that a state court's plain-error review of an issue may receive AEDPA deference when the state court addresses the merits of the federal claim"). Moreover, the law requires deference to be given under § 2254(d) even in cases where the state court's reasoning is abbreviated. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). Accordingly, the Court finds that the state court adjudication of Petitioner's claim is entitled to the deferential standard of review under § 2254(d).

The first step under § 2254(d) is to determine what constitutes "clearly established" Supreme Court law pertaining to Petitioner's claim. *Carey v. Musladin*, 549 U.S. 70, 77 (2006). The Sixth Amendment provides that a criminal defendant "shall enjoy the right to a . . . public trial." U.S. Const. Amend. VI. This right is made applicable to the states through the Fourteenth Amendment. *See Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968);*Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982); *Waller v. Georgia*, 467 U.S. 39, 46 (1984).

Petitioner relies on *Waller* and *Presely* as creating the clearly established constitutional rule that the state courts unreasonably applied in his case. Prior to their criminal trial in *Waller,* the defendants moved to suppress evidence, and the state moved to close the suppression hearing from the public. Over objection, the trial court granted the state's motion, and it ordered that all members of the public would be banned from attending the suppression hearing. The defendants appealed their convictions and argued that the exclusion of the public from the suppression hearing violated their right to a public trial. The Supreme Court agreed that "the closure of the entire suppression hearing plainly was unjustified." *Id*. at 48. The Supreme Court identified four factors a court must consider and findings a court must make before closing the courtroom to the public: (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced;" (2) "the closure must be no broader than necessary to protect that interest;" (3) "the trial court must

10

consider reasonable alternatives to closing the [proceeding];" and (4) the trial court "must make findings adequate to support the closure." *Id*.

In *Presley*, the Supreme Court reaffirmed that a trial court must make the required findings under *Waller* before closing a jury selection proceeding in a criminal trial. In that case, the trial court noticed a single member of the public–the defendant's uncle–in the courtroom prior to the start of jury selection. The trial court ordered the person to exit the courtroom because "there just [wasn't] space for [him] to sit in the audience," and excluding him was necessary to prevent him from "intermingl[ing] with members of the jury panel." *Presley*, 558 U.S. at 210. The Supreme Court held that the state trial court erred when it failed to consider alternatives to removal of the single member of the public in attendance before the jury was brought in. *Id*. at 214-215.

Both of these cases–indeed all Supreme Court cases on the subject–involve so-called "full closures," where all members of the public were unconditionally, explicitly, and completely barred from attending a court proceeding. *Waller* involved the court-ordered full unconditional closure of a courtroom during a suppression hearing. *See Drummond v. Houk*, 797 F.3d 400, 402-03 (6th Cir. 2015). *Presley* involved the court-ordered full unconditional closure of the courtroom during jury selection. *Press-Enterprise Co. v. Superior Court of California,* involved the court-ordered exclusion of the press and the public from jury selection at a rape trial. 464 U.S. 501, 503-504 (1984). And *Globe Newspaper Co.*, involved the court-ordered complete closure of the courtroom to the public and press at a criminal trial. *Id.,* 457 U.S. at 598.

As the Sixth Circuit recently noted, "[n]early all federal courts of appeals . . . have distinguished between the total closure of proceedings and situations in which a courtroom is only partially closed to certain spectators." *United States v. Simmons*, 797 F.3d 409, 413 (6th Cir. 2015). Moreover, "[a]ll federal courts of appeals that have distinguished between partial closures and total

11

closures modify the *Waller* test. . . ." *Id.*, at 414.

The fact that federal appellate courts have drawn a distinction between full and partial closures is significant. This is because if federal appellate courts are permitted to modify the *Waller* test when a closure is only a partial one, then it necessarily follows that the clearly established Supreme Court standard only applies to full closures. *See Drummond*, 797 F.3d at 403 ("There is no clearly established Supreme Court law as to how the rules in *Waller* apply in cases, like Petitioner's, where some spectators, but not all of them, were removed from the courtroom"). And here the Michigan Court of Appeals characterized the closure that took place as a partial one. *See* Dkt. 5-22, at 7 ("The limited capacity of the courtroom was a substantial reason for the closure, and, thus, this partial closure did not deny defendant his right to a public trial").

The issue under § 2254(d) then becomes: Could a fairminded jurist conclude that the state trial court's necessary initial act of removing members of the public from a full courtroom to make room for a jury venire, and then allowing reentry only to those people making a request in light of the limited space remaining, be considered a partial closure and therefore not a circumstance governed by clearly established Supreme Court law? In other words, if the factual setting presented by this case is distinguishable from the court-ordered full unconditional closures at issue in the relevant body of Supreme Court law, then the Michigan Court of Appeals decision could not have been unreasonable "in the capacious sense of 'reasonable' as used for purposes of the habeas statute." *Drummond,* 797 F.3d at 404; *see also Carey*, 549 U.S. at 77 ("Given the lack of holdings from this Court regarding the [circumstances presented], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'").[1]

_____

[1] The Court notes that in *Drummond* the Sixth Circuit found that aside from its four-part test, *Waller* also stated a general rule–applying to any type of closure–that "a trial court must balance the interests for and against closure." *Id.*, 797 F.3d at 402 (citing *Waller*, 467 U.S. at 45). To the

Petitioner asserts that the determination that the closure was partial and not full constituted an unreasonable determination of the facts under § 2254(d)(2). The record, however, allows for a fairminded jurist to conclude that what occurred at Petitioner's trial amounted to at most a partial closure, and therefore allows for a reasonable determination that no clearly established Supreme Court rule governs Petitioner's claim.

Prior to the jury selection in Petitioner's case there simply was no room in the courtroom for the jury venire. Petitioner does not dispute the obvious point that it was therefore necessary for members of the public to be at least temporarily removed to make room for the prospective jurors. This is different from what happened in *Presley*, for example, where the trial court ordered the sole spectator who was already seated with the jury venire to be removed despite there being space for him. Here, in contrast, the trial court explained when the objection was first raised that it "was not excluding people from the courtroom," and it would allow reentry, space permitting, after the venire was seated. Dkt. 5-10, at 19.

It is true that after the venire was seated the courtroom deputies (acting on their own or under some standing policy or custom) did not allow members of the public to reenter on their own initiative. Petitioner's brother was told by a deputy that he could not reenter, and Petitioner's mother saw deputies turn another woman away. Nevertheless, the trial court's statement after the jury selection proceeding was complete indicates that it would have allowed reentry of members of the

---

extent that rule applies to the circumstances of this case at all–where the trial court stated it was not ordering a closure at all–the Court notes that the trial court cited the obvious need to provide seating for the jury venire before re-opening the courtroom for the public to fill the remaining seats. Before the jury venire was brought in, the courtroom was already filled to capacity and there was no room to fit the prospective jurors. *See* Dkt. 5-10, at 108. By deciding to give preference to the jury venire and allowing the public to occupy any remaining seats upon request, the trial court was in effect balancing the interest in conducting an orderly and efficient jury selection proceeding with the right for members of the public to attend the proceeding.

13

public to occupy the two remaining open seats if a request had been made. And the stipulated facts indicate that the deputies would have allowed reentry if they had been ordered to do so.

Reasonable arguments can threfore be made that what occurred at Petitioner's trial is different from the explicitly court-ordered closures present in *Waller* and *Presley*, and therefore habeas relief is barred under § 2254(d). In both of those cases, the trial court ordered the courtroom closed from the public absolutely and unconditionally. Final rulings were made that the courtrooms were closed to the public, leaving no option for members of the public to request reentry. In contrast here, no such final ruling was made. In fact, the trial court explicitly stated that it was *not* excluding people from being in the courtroom, and it went on to explain that the courtroom would be re-opened after the jury venire was seated. In other words, the trial court here did not order a full closure of the courtroom in the sense that the entire public was absolutely prohibited from attending a court proceeding as in the relevant Supreme Court cases. Rather, the closure was "partial" in the sense that the courtroom was initially and necessarily emptied simply to allow seating for the jury venire, and then it was open to people who obtained the court's permission to fill the few remaining seats.

Petitioner asserts that partial closures typically involve situations where some members of the public are permitted to remain in the courtroom but others are not. *See, e.g.*, *Drummond*, 797 F.3d at 401-402 (courtroom closed to public for several hours during trial but members of media permitted to stay); *People v. Russell*, 297 Mich.App. 707, 720 (2012) (courtroom open to limited number of defendant's family members due to space limitations). Petitioner asserts that emptying the courtroom and then by policy or practice having the courtroom deputies prevent anyone from re-entering amounts to the functional equivalent of the full closure at issue in *Presley*.

But showing that what occurred is arguably functionally equivalent to what Supreme Court

law prohibits is not enough under § 2254(d). *See, e.g.*, *Bland v. Hardy*, 672 F.3d 445, 447-48 (7th Cir. 2012) ("Until the Supreme Court has made a right *concrete*, it has not been 'clearly established.'") (emphasis in original). And here, persuasive arguments can be made to distinguish Petitioners's case from *Presley*. The trial court stated when the objection was first raised that: "the court is not excluding people from being in the courtroom. . . . [O]nce the whole panel is in, those who fit separately from the jury can be allowed in. . . . At this point, there were no available seats to fit jurors in. So for that reason, those people have to be removed initially in order to bring in the panel." Dkt. 5-10, at 20. While the Court did not explicitly state that individuals wishing to re-enter were required to make a request of the court, this initial ruling was enough to prompt either defense counsel or an interested member of the public to ask for permission to reenter even if a courtroom deputy initially prohibited reentry. That is, it is reasonable to believe that to gain reentry, a person need only have asked the deputy barring her way: "But the judge said I could go back in if there was room, won't you check?" Or had defensive counsel been attentive, upon seeing that Petitioner's mother and brother were absent after the venire had been seated, he might have made a timely request for their attendance. So while the sign on the door and the deputies' actions may have deterred the public from asking for permission to reenter the courtroom, those actions are reasonably distinguishable from the explicitly issued final orders of the courts fully closing the courtrooms at issue in the relevant body of Supreme Court law.

That is, at a bare minimum, at least a reasonable argument can be made that because the trial court stated that it was only initially clearing the courtroom, and that members of the public would be allowed to reenter space permitting, there was no court-ordered full closure of the courtroom as in the relevant Supreme Court cases - despite the hurdles members of the public faced due to the deputies' actions to gain reentry. In other words "'there are reasonable arguments on both sides -

2:14-cv-14560-SFC-PTM   Doc # 8   Filed 07/19/16   Pg 16 of 17   Pg ID 2149

which is all [Respondent] needs to prevail in this AEDPA case.'" *Drummond*, 797 F.3d at 404 (quoting *White v. Woodall*, 134 S.Ct. 1697, 1707 (2014). Accordingly, the Court finds that because a fairminded jurist could conclude that there was not a court-ordered full closure of the courtroom during jury selection as in the relevant body of Supreme Court law, but rather the circumstances amounted to at most a form of "partial closure," Petitioner's claim cannot be supported by clearly established Supreme Court law as required by § 2254(d). The petition must therefore be denied.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). It is not reasonably debatable whether clearly established Supreme Court law applies to partial closures of a courtroom such as the one at issue in this case. The Court will therefore deny a certificate of appealability.

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: July 19, 2016

16

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 19, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy_____
Case Manager